Okay, I guess we're ready to start in 19-1298 U.S. v. Silva. Mr. Arcesi, are you, uh, Arcesi. Thank you, John Arcesi, uh, from the Federal Defender's Office in Denver appearing for Appellant Donovan Silva. Your Honors, I want to start today with Application Note 3a in Chapter 4 of the Guidelines because it is this case. By its own terms, that guideline applies to guidelines with predicate offenses, and it instructs that when, as here, a prior conviction is contained within a single sentence, it can only count as a qualifying predicate crime of violence if it independently would have received criminal history points. There is no dispute here that Mr. Silva's 2006 assault does not receive criminal history points by virtue of being too old, and it can't therefore serve as a predicate. Mr. Arcesi, do you have any additional authority beyond the comment, uh, for this point? In other words, is there, is there any case authority, um, anything beyond the comment that would, would support your position? I don't have any cases, uh, Your Honor, and nor do I need any to prevail, um, because this Court has recognized that the absence of precedent, uh, doesn't preclude plain error review or prevailing on plain error when the plain text is clear. And that's for good reason, because Mr. Silva shouldn't be penalized just because some other district court hasn't made an obvious error that has necessitated appellate review at this point. So I'm, I'm relying exclusively on the plain text of Note 10 in 2K2.1, Note 3a in 4A1.2, but I do think that the amendment, Amendment 795, that added Note 3a to the guidelines in 2015, uh, completely supports our reading of it. I don't think you need to go there because the text is so clear, um, but that provides further explanation about the breadth of the intended note, for the note to apply, as well as the purpose of a note. Could you address, could you address the government's, uh, argument on whether if there was error, uh, was it plain, uh, based on United States versus Ramon? Sure. Ramon has absolutely nothing to do with this case. Um, I'll give you three reasons why. Okay. The first is that I think the government significantly overstates the holding in Ramon as it would apply in this case. That is that Section 3584 in Ramon is dramatically less clear than the provisions at issue here. And not only that, but the Supreme Court had expressly reserved the very question as an open question in that issue in Ramon and two circuits had found the error to be not plain. So that's one. Okay. Number two is far from delving into the inner workings of the guidelines as the panel in, Ramon was suggesting it had to do for its analysis. All I'm suggesting here is you just need to read two guidelines and apply two application notes. This is, is not particularly complex. I think everyone just missed it below. These are directly and plainly on point. Um, and the third reason I think is that Ramon did not, and indeed as a panel decision, right, could not change anything about the long recognized rule that errors are plain, where the natural reading of statutory or guideline language makes them clear, right? And this court has found plain error in far more complex situations. I think of a parallel example is the controlled substance offense definition, right? In, you can get enhancements of predicates from, from crimes of violence or from controlled substance offenses. And just this summer, at least two members of this panel were on another panel and can too, um, where that analysis involves, uh, you know, digging into his state, state historic drug schedules and state court decisions about whether or not a jury anonymity is required for a particular drug. I mean, that's a far more involved endeavor than just applying the guidelines in order. Let me get to the heart of your argument here. You're saying application note three to section 4A1.2 is incorporated into 2K2.1 and didn't need to be expressed in application note 10 to 2K2.1. It was, it was clear because it was an application note three to 4A1.2, so it didn't need to be repeated in application note 10. Isn't, isn't that essentially what you're saying? Yeah. Application note 10 takes us to chapter four and application note, um, 3A, right? It says to, when you're applying these predicate prior crimes of violences, you only use them if they accrue criminal history points under chapter four. So you go to chapter four. Note 10 doesn't cite every provision of chapter four. It cites 4A1.1, A, B, and C, which as that provision says has to be read in connection with 4A1.2, right? And so you just apply chapter four and then you come back. Okay. But if you look at, um, application note 3A, same application note, it also states that predicate offenses may be used only if they are counted separately. Correct? That's correct. I'm sorry. I got the wrong part. Well, there are two parts. Yeah. Only if they're counted separately from one another. Separately under, under, and that's a ref, that's 4A1.2, A2. But they repeat that in application note 10 to 2K2.1. That only makes it more plain, I think, your honor. Well, it strikes me as why would they feel it's necessary to include the sentence in application note 10 saying in addition for felony convictions that are counted separately under 4A1.1, et cetera. Why would they feel a need to include that if it was so plain? You're saying it makes it more plain. If it was already plain by looking at application note three, that they had to be counted separately to be counted. Why didn't they also include, you know, if they're going to emphasize that by repeating it, why didn't they repeat the sentence of application note three that you're relying on? The one that they have to be, that they would independently have received criminal history points. That concerns me. It makes me think that it's not, it's not all that clear or the authors didn't think it was all that clear that application note three applies in the circumstance of 2K2.1. Maybe they don't consider them predicate offenses in the same sense. There's no cross-reference to 2K2.1, but why would they include one sentence from application note three and repeat that point and not repeat the other? Doesn't that suggest that one applies and the other doesn't? No, not at all. Let me give you a couple responses to that, I think. First, sort of just as a contextual matter, right, the first sentence of note 10 tells us to go to chapter 4 and apply chapter 4 and then essentially come back with any crimes of violence that are categorically a crime of violence and that get criminal history points, right? And then the second sentence tells us, in addition, it is literally prefaced with the phrase, in addition, when applying these other two subsections, A1 and A2 predicates also do this additional thing, which is count them, only use two that are treated separately under. Yeah, but why did they need that sentence? Because if you're saying application note three clearly applies to 2K2.1, why would they need to include that in addition sentence? So that language in note 10, in 2K2.1, pre-exists note 3A. It was added in amendment 630 back in 2001, and it exists in a world in which note 3A doesn't clarify this independent points rule. That is, you just apply chapter 4, then you come back, but also here's this other restriction that you apply. Let me make sure I'm understanding. You're saying application note 10 predates application note 3A? Yeah, yes, and so application of 3A was added in 2015, I believe, of amendment 795, to resolve a circuit split, not on this precise issue, but on a different issue, a strange eighth circuit case that was an outlier. It's described in the amendment, but then in doing so, clarified that we're only going to count as predicates crimes of violence that independently receive criminal history points. I think this additional sentence is simply an indication that all of these predicate offense guidelines, whether it's the career offender guideline, the firearms 2K2.1, the illegal re-entry 2L1.2, that have these types of provisions that ramp you up for multiple prior predicates, that they all turn on this single sentence rule, and it's a reminder, I think, that you apply the rule we just said, which is you get a crime of violence predicate if it independently would receive criminal history points, but that's not the end of the story, right? You could have two crimes of violence contained within a single sentence that independently receive criminal history points, but you don't get the double bump under these enhancement predicate enhancements, unless they're counted as separate sentences under 2A, and that's true across the board. So I think that that's just a recognition and a reminder of that rule. So I don't think there's really much... The history here seems relevant to me. I have to think about it more, but when Application Note 10, if I'm understanding you correctly, was written in its present form, there wasn't an Application Note 3A? No, there was an Application Note 3... I think at the time Application 3B was Note 3, which is an upper departure provision, and I would invite you to the other one I would look at for that history. I think it's informative and only reinforces the position that we've advocated for, but it does not... I don't need it to prevail. I think the plain text is extraordinarily plain, but to the extent that that history reinforces our reading, you know, it's only additive. In the same way that the way in which 4A1.2A treats single and separate sentences is completely consistent with the underlying policies of punishing recidivism. So at the end of the day, I just want to be clear, this is a pair of this Note 10 second sentence. It's an additive provision. It has absolutely nothing to do with this case. Ramon has absolutely nothing to do with this case. All we're asking is to apply a natural reading of the plain text of Note 10 and Note 3A and reverse for resentencing, and if there are no further questions, I'll reserve the balance of time. I want to ask, you seem to be assuming that 2K2.1 is an example of a guideline with predicate offenses. Are there any cases that say that? That's what they're referring to, not the various guidelines that are included in Chapter 4. It has to be 2K2.1, 2L1.2 because the Note 3A expressly references the career offender guideline for B1.2 as an example, and then goes on to say under the career offender guidelines or other guidelines with predicate offenses. This is the language of predicate offenses. These ratcheting up specific offense enhancements, I can't think of a case that describes it off top of my head, but I'm happy to submit a 28J. The guidelines don't define the term predicate offenses. It's not a term of art in Chapter 1. It's a description of how these other provisions operate, but I don't think there's any question in this, but certainly the government hasn't contended that that's a hook that would include application, and if there are no further questions, I would recommend. Did you have a question, Judge Carson? I didn't. Okay, thank you, counsel. May it please the court. I think I'd like to start off where Mr. RCC kind of spent much of the time, and that's the history here. I think the history is actually very good for the government on this particular provision, so he's correct that in 2001, Note 10, that's when Note 10 comes into being, and at that time, it specifically references to 4A1.2 and Comment Note 3. Then in 2007, the Note 3 gets changed, and it gets changed to what is currently in Note 3B, and in 2010, the Sentencing Commission then deletes the reference to Comment Note 3, making clear that, and they say it's for accuracy, which makes clear that the reason that they don't want that reference anymore is they don't want to reference the 3B, and so they take that out, and then in 2000, and then in 2000. No, I want to get this right, so run through that. I'm trying to follow back and forth. Yeah, let me slow down. So in 2001, we get Note 10, and it's at the time has a reference. It's basically where now it says 4A1.2. It's at that time reference 4A1.2, Comment Note 3, so it was referring at that time to Note 3 of 4A1.2, specifically incorporating it. Then six years later, Note 3 of 4A1.2 changes, and they replace it with the text that today is in 3B. Then three years later, in 2010, Amendment 746 to the guidelines is done, and all it does to 4A1.2 is strike out the Comment Note 3. It leaves the 4A1.2 reference, but strikes out the Comment Note 3, and it says it's doing that for accuracy, because now we've got a guideline that's changed. It's not the reference that it was originally referring to. So that's the new, okay, so in 2001, Note 10. In 2007, Note 3 has changed. Now you're saying in 2010, Note 10 has changed. It changes it to remove the reference to Note 3, because what's now in Note 3, it doesn't feel as accurate for how you're going to deal with 2K2.1. So it's specifically saying what's now in 3B, that is not something we do for 2K2.1. Then in 2015, that's when we get this language that's in 3A, and it's what creates 3A and 3B. Before 2015, 3B was Note 3. We add in 3A, and the Sentencing Commission doesn't go back in 2015, or in the years since, go back and say, okay, let's bring back in Note 3, or any of the other notes to 4A1.2. They leave it empty. We know that they definitely don't want to reference the 3B, so I don't know why we'd incorporate 3A now, but not 3B. There's not a reason to do that. The fact that they specifically chose to exclude commentary means something here, and if you look at the other notes in 2K2.1, in Note 1, there's a specific reference to a commentary note. It specifically references Note 1 to the Career Offender Guideline. If you go to Note 14E, it refers to several application notes to 1B1.3, and so I think that supports our reading here that really Note 10 is setting out the rules when it comes to the single sentence, when you've got bundled sentences, and how we're going to deal with that, and it doesn't bring in this exception from Note 3. It says, yeah, let's look at how it's done in 4A1.2, and if it's going to get criminal history, we're going to give, we're going to count it, but it doesn't bring in that exception from Note 3 that says, well, but it has to be score points on its own. That has not been incorporated. And what would be the reason for that? Why would that be good policy? So I think you have to think about what the guideline is here. 2K2.1 is the felon in possession of a firearm statute, right? And so when we're dealing with that, maybe we don't want to jack the person up if they have a couple bundled offenses, but if one of their past offenses is a crime of violence or a drug crime, we want to set at least some sort of floor that they're going to get for that, because they've done something that we don't want mixed with guns before, and now they're doing guns again. And so we want to count it at least once. And if you look at that note, the second sentence of that note, it's saying, well, for A1 and A2, they have to be counted separately. And it's not just saying, if you have multiple, call them predicate offenses, that's when you separate them. It says they have to be counted so that even if you have the situation here where you had a crime of violence and it's bundled with one that's not, it's saying you still can't count that. Then this A3, A4, A position part becomes basically a floor, and it says, so maybe you can't be under A1 or A2, because neither of those are going to count for A1 or A2, but you can use one of those bundled ones. When it comes to A3 or A4A, we're going to let you use at least one of those, and that's going to set more of a minimum, given that you're dealing with the offense here being you're a felon, you previously did something we don't want you to have guns with, and now you're out there with a gun, so we're going to bump you up. I think that would be the policy reason for doing that. At the very least, I think if you look at the history and you look at the fact that we have competing text here, I don't see how we can say it's plain. The main case they cite for plainness is the Brown case, where this court did find plain error, and that was a case where the judge basically gave one level for acceptance of responsibility, which we all know under 3E1.1, it says you have to give two levels, you can't just give one level, and the court went through that and said, no, we find that's error, despite the fact that there wasn't any sort of competing text or anything else, and that the 3E1.1 plainly that you have to give two levels, this court said on plainness that it was a somewhat close call. Well, if the plain text of a guideline with no competing text is somewhat of a close call, I think here, where you have to delve in to looking at the history of these two comments to figure out what the conflict is, that's requiring more work. As Ramon said, that is not plain error. You're going to need a court case on point in that particular situation. We can't do a quick glance at the text here, and away we go, we know what the error is. Judge Hartz was asking your opposing counsel about 2K2.1 and predicate offenses, and do you agree that parts of 2K2.1 require us to consider whether there was some predicate to ratchet up the sentence? Correct me if I'm not answering your question here, but I think Judge Hartz was talking about whether comment three, when it's referring to predicate offenses, do you mean whether the stuff in 2K2.1 are predicates, whether that's what we're talking about here? I think that's probably a fair reading. I mean, I think when you're talking, and when it says other sentencing, sorry, other guidelines with predicate offenses, it certainly, well, let me suggest that what's happening in 2K2.1 are certainly predicates, whether or not that that meant to go beyond the chapter that they're in, I think that's less clear, but I do think that we would be calling these things predicate offenses here when it's a prior offense that we're using to then enhance something. Okay. You don't disagree that our precedents, US v. Fuentes, for example, have referred to some of the offenses that have to be found for application of 2K2.1 as predicate offenses? No. Okay. So, you then went on to say, but that doesn't mean that comment three applies. And why is that? It's because I think comment 10 is filling the space here, that it's setting out a more specific rule about how 2K2.1 is going to deal when you have these bundled singular offenses. And it's basically just saying, does it get criminal history points? Question one, it does, no reference to note three. So, we don't think about the exception that's set out in note three. And then it says, when you're dealing with A1, A2, yes, they have to be counted separately, which is going to much of the same stuff that's in note three, but when you're dealing with, it has no reference to A3, A4a. So, it's not at all incorporating sort of this, it needs to be counted separately. The fact that you have a singular offense here, and it gets criminal history points is enough. And that more specific understanding in comment 10, plus the history suggesting, if it wanted to bring in this stuff from three, it was specifically going to do it, suggests that that stuff from note three is not part of 2K2.1. Unless the court has further questions, I'm happy to see the remainder of my time. Let me just ask you, if we end up disagreeing with your position, and Mr. Silva has satisfied prongs one and two of plain error, should we reverse? We haven't argued on prongs three and four, and we've had cases before where one and two are met, and this court, I think, fairly regularly says, we want something from the district court judge saying that I would pretty much done the same thing. I don't think we have that here. I think we've waived it, and I think prongs three and prongs four are probably met if you find that, in fact, prongs one and prongs two are met, prong one and prong two. Thank you. Okay, thank you, counsel. Can I ask you one question real fast before we get away from Mr. Grewal? As far as whether there is error, I mean, it seems to me in your opening brief that you don't argue against the fact that there's error, that your argument goes to the plainness of any error, and is that fair? You basically concede prong one. I don't think we concede prong one. I think it was a tough question, and what I'm simply saying is, it's an easy question on plainness, so I don't think you even have to answer it on error, but I'm not conceding that the reading of the statute is, as they say, particularly in light of the history here where note three was removed from note 10. I think our reading is as good, if not a better reading, than the one that Mr. Silva offers. Thank you. Thank you. Okay, thank you, Mr. Cici. Yes, so let's, I just want to kind of step out of the weeds here. This is exceedingly simple, actually. The first sentence of note 10 directs us to chapter 4, and it does not cite every provision of chapter 4, because it doesn't need to cite every provision of chapter 4. It encapsulates all of the provisions of chapter 4. You apply them, then you come back, and the second sentence says, in addition, here is another rule to apply that is not expressly articulated in chapter 4. It only has applicability to subsections A1 and A2 and its two prior predicate offenses. It would be the reason, and let me just be clear, that the removal of note three that the government referenced was a removal of the old note three that dealt with upper departure provisions. It'd be nonsensical to reference that in this guideline at this point, and again, it's not necessarily, and it would be exceedingly strange for the commission to create by negative implication the rule that the government is suggesting when there is a clear, direct, broadly applicable, and directly on-point provision cross-referenced in note 10. It's as simple as that. It's error, it's plain, and a remand for on the history. You mentioned that the in addition sentence in comment 10 predated comment three, what's now comment 3A. Is that right? Yeah, I believe that that was added as part of amendment 630 in 2001, is my recollection. But then note 10 was later amended three years after note 3A was added. Note 10 was amended, is that right? No, no, no. Note 10 and 2K2.1 have not been materially altered since note 3A was added to the guidelines in 2015. I think what Mike probably was referencing was, I don't remember the amendment off the top of my head, but I think it was a 2007 change that removed a cross-reference to then note 3B that would have been on was essentially nonsensical in the context because it dealt with an upper departure provision. Again, I don't think you need any of this history because the text is a natural reading of the plain text is exceedingly clear to the extent that you look at it. Amendment 795 is the one that makes this pellucid as to what the commission intended with note 3A. If the court has no further questions, I'm out of time and I would just ask for reverse resentencing. Thank you. Thank you, counsel. Case is submitted. Counsel are excused.